IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
AT KANSAS CITY

| | |
|---|---|
| TAMERA SWEEETON, on behalf of herself and others similarly situated,<br><br>and<br><br>JASON MOSS, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>VITALS CONSUMER SERVICES, LLC,<br><br>Defendants. | Case No. 4:23-cv-00088-BCW<br><br>**JURY TRIAL DEMANDED** |

**FIRST AMENDED CLASS ACTION COMPLAINT**

For the First Amended Class Action Complaint against Vitals Consumer Services, LLC ("Defendant"), Plaintiffs Tamera Sweeton and Jason Moss ("Plaintiffs"), on behalf of themselves and all others similarly situated, state and allege as follows:

**INTRODUCTION**

1. This is a lawsuit for invasion of privacy and right of publicity based on the misappropriation of class members' names and likenesses.

**THE PARTIES**

2. Plaintiff Tamera Sweeton is a natural person residing in Johnson County, Kansas and a licensed counselor practicing in, among other places, Jackson County, Missouri. During the applicable class period as defined below, Plaintiff Sweeton's name and likeness was misappropriated by Defendant for the purpose of causing persons

1

searching for a medical provider to visit the vitals.com website for Defendant's commercial gain.

3. Plaintiff Jason Moss is a natural person residing in Jackson County, Missouri and a licensed chiropractor practicing, among other places, Jackson County, Missouri. During the applicable class period as defined below, Plaintiff Moss's name and likeness was misappropriated by Defendant for the purpose of causing persons searching for a medical provider to visit the vitals.com website for Defendant's commercial gain.

4. Defendant Vitals Consumer Services, LLC ("Vitals") is a corporation organized and in good standing under the laws of the State of Delaware with a principal place of business at 160 Chubb Avenue, Suite 301, Lyndhurst, NJ 07071. It can be served through its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

5. WebMD acquired Vitals Consumer Services Division from MDx Medical Inc. in 2018. On information and belief, Vitals Consumer Services, LLC was formed as part of the acquisition and is owned by WebMD.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). There are at least 100 members in the proposed class, the aggregated claims of the individual class members exceed the sum or value of $5,000,000.00 exclusive of interest and costs, and members of the proposed class are citizens of states different from Defendant.

7. This Court may exercise jurisdiction over Defendant because, through its business of promoting its website and entering into advertising agreements in this District,

2

Defendant has established sufficient contacts in this District such that personal jurisdiction is appropriate.

8. Venue in this Court is proper under 28 U.S.C. § 1446(a) because this Court is the United States District Court for the district and division corresponding to the place where the state-court action was pending at the time of removal.

## FACTUAL ALLEGATIONS

9. Defendant owns and operates a website known as vitals.com.

10. Defendant touts itself as "[a] trusted directory resource for patients, encompassing all practicing physicians in the US."

11. Defendant compiles this directory with free data that it obtains from public sources such as the NPI Registry and then uses it to solicit lucrative advertising deals.

12. The NPI Registry is an online query system that allows users to search for a healthcare provider's information.

13. An NPI is a unique identification number for covered healthcare providers, created to help send health information electronically more quickly and effectively. Covered healthcare providers, all health plans, and health care clearinghouses must use NPIs in their administrative and financial transactions.

14. The U.S. Centers for Medicare and Medicaid Services ("CMS") developed the National Plan and Provider Enumeration System ("NPPES") to assign NPIs.

15. CMS discloses NPPES healthcare provider data under the Freedom of Information Act ("FOIA").

16. There is no way to suppress the NPPES record of a healthcare provider with an active NPI.

17. Defendant claims it is "the #1 online sources for finding doctors with 14M+ monthly visits."

18. Defendant's business model involves publishing provider information on its website to drive traffic to the website for Defendant's business and/or financial gain. Defendant invites providers to claim their profiles, which are free to the provider. In addition to free profiles, however, Defendant also invites providers to "grow your practice on the #1 health network with WebMD + Vitals.com Enhanced Profiles."

19. Defendant claims paying for an Enhanced Profile will "put [the provider] in one of the top 3 positions for your specialty in your local area."

20. Defendant claims that by paying for an Enhanced Profile, "[n]o competitors or advertisements will ever be placed on your Enhanced Profile[]."

21. Defendant claims that by paying for an Enhanced Profile, "you will get additional exposure from having your profile show up on competitor pages."

22. Defendant uses providers whose names appear in free profiles as bait to steer website visitors to providers who have paid for an Enhanced Profile.

23. On information and belief, people who search for a provider such as Plaintiffs on Google or a comparable search engine are shown links to providers' profiles on Defendant's website. Clicking on a link will cause the provider's profile to be displayed, but along with that profile, links to Enhanced Profiles and advertisements also will be displayed.

24. Visitors to Defendant's website who search for providers are shown Enhanced Profiles and advertisements along with the profile of whomever they are searching for.

25. When a website visitor searches for a provider who only has a standard profile, the visitor will be directed to a page that contains both the standard profile and, directly beneath it, the heading "Featured Providers Near You." Beneath the heading "Featured Providers Near You" are links to Enhanced Profiles. The Enhanced Profiles often have professional photos to further draw the reader's attention.

26. The links to these Enhanced Profiles do not appear at random. On the contrary, they are links to providers who compete directly with the provider who only has a standard listing. They are targeted to that provider and to that provider's potential patients.

27. The links that appear beneath the heading "Featured Providers Near You" as well as the Enhanced Profiles themselves are advertisements, proposing that the website visitor engage in a commercial transaction with the specific person(s) whose name(s) is(are) listed.

28. Indeed, merely by clicking the link for Enhanced Profile, a website visitor engages in a commercial transaction because, on information and belief, Defendant is compensated on a per-click basis by individuals and entities who choose to advertise on vitals.com.

29. Once a visitor is on the webpage for an Enhanced Profile, competing provider advertisements are gone and not viewable.

30. Both the Defendant and the provider paying for the Enhanced Profile are economically motivated. Most obviously, the provider paying for the Enhanced Profile will benefit financially when a website visitor searching for different provider—one with a standard profile—instead chooses to purchase the services of the provider with the

Enhanced Profile. The provider paying for the Enhanced Profile further benefits by having a provider listing that contains additional information about the provider but that is not diluted by profiles of competing providers.

31. In addition to marketing its website to providers, Defendant also markets its website to companies in the health and wellness space. Defendant promises these companies they can "[r]each qualified patients in market for care, viewing physicians' profiles that are the most relevant to your brand."

32. Defendant tells these companies they will have a "competitive blunting opportunity" by "target[ing] your messaging to specialists who are high prescribers of competitive treatments."

33. When a website visitor searches for a provider who only has a standard profile, the visitor will be directed to a page that contains both the standard profile and, directly adjacent to it, an advertisement for a health and wellness product related to that provider's practice area.

34. These advertisements do not appear at random. They are targeted to providers who, because of the areas in which they practice, are likely to attract patients that might utilize the particular health and wellness products being advertised. Defendant uses providers with standard profiles to steer website visitor to these products.

35. Defendant enjoys a commercial gain by selling Enhanced Profiles and advertising on its website. Defendant sells Enhanced Profiles and advertising by using Plaintiffs' and other providers' names and likenesses without their consent and without giving them any compensation.

36. The links that appear beneath the heading "Featured Providers Near You" are not intertwined with the standard profiles that appear on the same page. Rather, they are separate and distinct and easily severable from the standard profiles.

37. The advertisements that appear directly adjacent to standard profiles are not intertwined with the standard profiles. Rather, they are separate and distinct and easily severable from the standard profiles.

38. Defendant does not obtain providers' permission to use their names and likenesses to drive traffic to Enhanced Profiles and advertisements, nor does Defendant compensate providers for such use.

39. Unlike familiar phone directories and "yellow pages," Defendant's business model and platform is not designed to list provider information in a generic, alphabetic order next to paid advertisements containing subject matter the viewers of the directory may or may not be motivated to read/search for. Instead, Defendant populates the webpage containing the "searched for" provider's profile with specifically selected and "enhanced" names/profiles of providers in the same practice area who have paid Defendant to highlight/draw attention to those profiles on the directory pages of other, non-paying providers like Plaintiffs.

40. In contrast to the familiar phone directories, "enhanced," paying providers are treated differently than non-paying providers. Enhanced Profile webpages do not make competing provider profiles viewable to readers, so readers are not drawn away from the profiles of the "enhanced" providers. This special treatment reflects Defendant's recognition that Defendant's website is not the "yellow pages" and that

Defendant's model of purposefully placing competing providers on a webpage can draw visitors away, to those other providers.

## Class Action Allegations

41. Plaintiffs bring this action pursuant to Rules 23(b)(2) & (3) of the Federal Rules of Civil Procedure.

42. Plaintiffs bring this action on behalf of themselves and all natural persons who, during the time period December 21, 2017, to the present, had an active NPI and appeared as a profile on the vitals.com website. Excluded from the class are all judicial officers presiding over this or any related case. The class definition also excludes all shareholders, officers and employees of Defendant. Plaintiffs reserve the right to modify this class definition as discovery or other case circumstances warrant.

43. The members of the class are so numerous that individual joinder of all class members is impracticable. Defendant strives to make vitals.com a comprehensive directory of all healthcare providers with an active NPI. The class is expected to number in the tens of thousands.

44. There are questions of law and/or fact common to Plaintiffs and the class, including but not limited to:

    a. Whether Defendant obtains an advantage by using the names and likenesses of class members as described herein;

    b. Whether Defendant uses the names and likenesses of the class members to advertise Defendant's business and/or for other commercial gain;

c. Whether class members expressly or implicitly gave Defendant their consent to use their names and likenesses as described herein; and

d. The pecuniary gain Defendant enjoyed from using class members' names and likenesses as described herein.

45. Plaintiffs' claims are typical of the claims of the class in that each of the Plaintiffs, like all class members, had an active NPI and appeared as a standard profile on the vitals.com website.

46. Plaintiffs are members of the class they seek to represent and are adequate class representatives in that, as members of the class, their interests are aligned with those of the class. There are no individual conflicts that would prevent Plaintiffs from adequately representing the class.

47. Plaintiffs have retained competent counsel experienced in class action litigation.

48. Class certification is proper because common questions of fact and law predominate over questions that may affect only individual members of the class.

49. A class action presents a superior form of adjudication over individual litigation.

50. The costs of litigating this action against Defendant, in comparison to the recovery or relief sought, would make individual litigation impracticable. In addition, forcing individual litigation would risk the result of inconsistent rulings.

51. This class action is manageable. The proposed class represents an identifiable community that can be readily identified, and the relief sought is one that can be overseen by this Court.

## Causes of Action

### Count I

### Invasion of Privacy – Appropriation of Name and Likeness

52. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

53. During the class period, Plaintiff Sweeton had an active NPI and Defendant published Plaintiff's personal and professional information as a standard profile on the vitals.com website.

54. During the class period, Plaintiff Moss had an active NPI and Defendant published Plaintiff's personal and professional information as a standard profile on the vitals.com website.

55. During the class period, Defendant acted to ensure that Plaintiffs' profiles appeared when Plaintiffs' names were searched on Google and similar search engines.

56. During the class period, clicking on Plaintiffs' profiles when they appeared in searches caused links to Enhanced Profiles and advertisements to appear, with resulted in business and/or commercial gain for Defendant.

57. During the class period, searching for Plaintiffs on the vitals.com website caused links to Enhanced Profiles and advertisements to appear, which resulted in business and/or commercial gain for Defendant. Enhanced Profiles did not contain the same competitor information and advertisements as set forth above.

58. During the class period, on information and belief, clicking on a link to an Enhanced Profile and/or on the Enhanced Profile itself resulted in Defendant earning a commission or otherwise resulted in Defendant realizing commercial gain.

59. During the class period, on information and belief, clicking on an advertisement resulted in Defendant earning a commission or otherwise resulted in Defendant realizing commercial gain.

60. Defendant knowingly and intentionally utilized Plaintiffs' names and likenesses without their consent to obtain an advantage, to advertise Defendant's business and/or for other commercial gain. In particular, as described herein, Defendant used Plaintiffs' names and likenesses to drive traffic to Enhanced Profiles and advertisements and thereby earned increased commissions or otherwise realized commercial gain.

61. Defendant engaged in the conduct described herein with respect to all other members of the putative class. Defendant utilized class members' names and likenesses without their consent to obtain an advantage, and to drive traffic to sponsored listings and thereby earn increased commissions or other commercial gain.

62. To be clear, Plaintiffs do not challenge the mere inclusion of their names and their practice information on the vitals.com website. Likewise, Plaintiffs do not challenge the ability of website visitors to post ratings of Plaintiffs' practices. Instead, Plaintiffs challenge the specific use of their names and likenesses to steer website visitors to Enhanced Profiles and product advertisements.

63. As a direct and proximate result of the foregoing, Plaintiff and the class suffered damages in an amount to be determined at trial.

64. Defendant's conduct as described herein was reckless and wanton and without regard for Plaintiff's rights and the rights of other class members.

## Count II

## Right of Publicity

67. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

68. During the class period, Plaintiff Sweeton had an active NPI and Defendant published Plaintiff's personal and professional information as a standard profile on the vitals.com website.

69. During the class period, Plaintiff Moss had an active NPI and Defendant published Plaintiff's personal and professional information as a standard profile on the vitals.com website.

70. During the class period, Defendant acted to ensure that Plaintiffs' profiles appeared when Plaintiffs' names were searched on Google and similar search engines.

71. During the class period, clicking on Plaintiffs' profiles when they appeared in searches caused links to Enhanced Profiles and advertisements to appear, with resulted in business and/or commercial gain for Defendant.

72. During the class period, searching for Plaintiffs on the vitals.com website caused links to Enhanced Profiles and advertisements to appear, which resulted in business and/or commercial gain for Defendant. Enhanced Profiles did not contain the same competitor information and advertisements as set forth above.

73. During the class period, on information and belief, clicking on a link to an Enhanced Profile and/or on the Enhanced Profile itself resulted in Defendant earning a commission or otherwise resulted in Defendant realizing commercial gain.

74. During the class period, on information and belief, clicking on an advertisement resulted in Defendant earning a commission or otherwise resulted in Defendant realizing commercial gain.

75. Defendant knowingly and intentionally utilized Plaintiffs' names and likenesses without their consent to obtain an advantage, to advertise Defendant's business and/or for other commercial gain. In particular, as described herein, Defendant used Plaintiffs' names and likenesses to drive traffic to Enhanced Profiles and advertisements and thereby earned increased commissions or otherwise realized commercial gain.

76. Defendant engaged in the conduct described herein with respect to all other members of the putative class. Defendant utilized class members' names and likenesses without their consent to obtain an advantage, and to drive traffic to sponsored listings and thereby earn increased commissions or other commercial gain.

77. To be clear, Plaintiffs do not challenge the mere inclusion of their names and their practice information on the vitals.com website. Likewise, Plaintiffs do not challenge the ability of website visitors to post ratings of Plaintiffs' practices. Instead, Plaintiffs challenge the specific use of their names and likenesses to steer website visitors to Enhanced Profiles and product advertisements.

78. As a direct and proximate result of the foregoing, Plaintiff and the class suffered damages in an amount to be determined at trial.

79. Defendant's conduct as described herein was reckless and wanton and without regard for Plaintiff's rights and the rights of other class members.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the class, respectfully request that the Court enter judgment in their favor and against Defendant as follows:

- A. Certifying the class as requested herein, designating Plaintiffs as the class representatives and appointing the undersigned counsel as class counsel;
- B. Declaring that Defendant is financially responsible for notifying class members of the pendency of this suit;
- C. Ordering payment of damages as permitted by law, including actual, compensatory, and punitive damages, to the full extent permitted by law;
- D. Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiffs and the other members of the class;
- E. Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and
- F. Ordering such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs and the class hereby demand trial by jury on all issues so triable.

Respectfully Submitted,

BARTLE & MARCUS LLC

By /s/ David L. Marcus
    David L. Marcus, MO Bar #47846
    BARTLE & MARCUS LLC
    4700 Belleview Ave., Suite 200
    Kansas City, MO 64112
    Telephone: 816.256.4699
    Fax: 816.222.0534
    Dmarcus@bmlawkc.com

WHITE, GRAHAM, BUCKLEY
& CARR, L.L.C
    Bryan T. White MO Bar #58805
    19049 East Valley View Parkway
    Independence, Missouri 64055
    Telephone: 816.373.9080
    Fax: 816.373.9319
    Bwhite@wagblaw.com

CLAYTON JONES, ATTORNEY AT LAW
    Clayton Jones, MO Bar #51802
    405 Foxwood Drive
    Raymore, MO 64083
    Telephone: 816.318.4266
    Fax: 816.318.4267
    clayton@claytonjoneslaw.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that on April 11, 2023, the foregoing was served via this Court's e-filing system on all counsel of record.

    /s/ David L. Marcus
    *Attorney for Plaintiff*